Argued and submitted June 28, affirmed October 2, 2002

STATE OF OREGON,
*Respondent,*

*v.*

WILLIAM EHRET,
*Appellant.*

F04666; A111249

55 P3d 518

Andy Simrin, Senior Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong* and Kistler, Judges.

EDMONDS, P. J.

---

* Armstrong, J., *vice* Warren, S. J.

## EDMONDS, P. J.

Defendant appeals from a conviction for possession of a controlled substance, ORS 475.992(4)(a).[1] In the trial court, he moved to suppress statements that he made to the police and the evidence seized from him and from his father's car during a traffic stop. The trial court denied the motion, and defendant appeals. We affirm.

The facts regarding the stop of the vehicle in which defendant was a passenger are described in detail in *State v. Ehret*, 184 Or App 1, 55 P3d 512 (2002).[2] In *Ehret*, we held that Officer Seber made a lawful traffic stop of defendant's father's (Albert's) car, in which defendant was a passenger. However, we also held that Seber impermissibly extended the duration of the stop when he asked Albert to get out of the car, searched him with his consent, and questioned him extensively about narcotics after having completed the citations related to the traffic violations. In response to approximately 15 minutes of questioning, Albert made admissions that he might have a marijuana "roach" in the car and that he did not know whether defendant possessed more than an ounce of marijuana. Based on that information, Seber approached defendant and confronted him. He told defendant that a drug dog might be coming to the scene, that the possession of less than an ounce of marijuana was a violation rather than a crime under Oregon law, and that Albert had said that there might be a marijuana roach in the car. In response, defendant reached into his pants and pulled out several baggies containing marijuana and construction paper containing LSD. He said that the baggies contained marijuana and that they belonged to his father. The discovery of the drugs ultimately led the officers to search the remainder of the car, where they discovered a large amount of cash and more contraband. Some of the controlled substances that

---

[1] Defendant entered into a conditional guilty plea under ORS 135.335(3), based on this challenge to the trial court's ruling admitting the contested evidence. That statute allows a defendant to enter a conditional guilty plea, challenge an adverse determination of a pretrial motion on appeal, and then withdraw the plea if he or she prevails on appeal.

[2] Defendant in this case is the son of the defendant in *Ehret*, 184 Or App 1.

form the basis of the charge against defendant were found in defendant's backpacks and bags in the trunk of the car.

On appeal, defendant argues that the evidence that is the subject of his motion was seized as the result of, or derived from, the unlawful detention of the vehicle and Albert's person, and it therefore is subject to suppression. He relies on Article I, section 9, of the Oregon Constitution[3] and the Fourth Amendment to the United States Constitution.[4] The state counters that, "[b]ecause defendant does not assert a violation of his own personal rights, he cannot bring a constitutional claim here." Alternatively, it argues that there was no exploitation of any illegality that resulted in defendant's actions and that he voluntarily gave the baggies to the officer, which provided probable cause for the remainder of the search. We turn first to defendant's state constitutional arguments. *State v. Cookman*, 324 Or 19, 25, 920 P2d 1086 (1996).

■■ We begin with defendant's argument that he, like Albert, was independently seized in violation of his own Article I, section 9, rights by the detention of the car in which he was a passenger. The evidence is to the contrary. The record shows that he was free to leave the car and walk away from the scene of the stop while Albert was being questioned. It was only after he removed the drugs from his pants and gave them to the officer that his person was seized. Before that time, defendant was allowed to roam around during the questioning of Albert, and Seber testified that he would not have stopped defendant from leaving the scene. Although the stop occurred in a rural area on an interstate highway, we fail to see how that circumstance materially affects the issue before us in light of the record. Moreover, any incidental detention of defendant as a passenger during the time of a lawful stop of the driver does not implicate Article I, section 9. *State v. Bowen*, 88 Or App 584, 588 n 4, 746 P2d 249 (1987), *rev den*,

[3] Article I, section 9, provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

[4] The Fourth Amendment provides, in part:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"

305 Or 45 (1988). Accordingly, we reject defendant's contention that he personally was seized at all—let alone unconstitutionally—before the officers confronted him with his father's statements.

■     Next, we discuss defendant's assertion that the police traded on the violation of Albert's right against an unreasonable seizure to unlawfully obtain admissions from Albert, which in turn prompted defendant to produce incriminating evidence from his person.[5] First, we acknowledge defendant's privacy interests in the baggies that he produced in response to the officer's statement. *State v. Morton*, 326 Or 466, 470, 953 P2d 374 (1998). Defendant also had a privacy interest in the backpacks and bags in Albert's car that were subsequently searched. Second, we agree with the trial court that defendant produced the drugs voluntarily in response to the officer's assertion. There is no evidence that the police threatened or coerced him to produce the baggies. Rather, they informed him that his father had admitted that there was marijuana in the car, and, in response, defendant spontaneously delivered the baggies to the officer. Thus, defendant's argument reduces to whether Seber's use of Albert's statements to confront defendant constitutes an unconstitutional use of a prior illegality that requires suppression under Article I, section 9.

■     A violation of Article I, section 9, occurs when police unreasonably invade a protected privacy or property interest of a defendant. *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986). Upon a showing that an unreasonable search or seizure has occurred, the person whose rights were violated is entitled to suppression of the evidence obtained unlawfully without demonstrating that suppression will in fact deter further unlawful conduct. *State ex rel Juv. Dept. v. Rogers*, 314 Or 114, 119, 836 P2d 127 (1992). The policy underlying the exclusionary rule under Article I, section 9, is the vindication of the individual right that has been violated through suppression of the evidence obtained in violation of the right.

---

[5] The record indicates that defendant had been asked earlier for permission to be searched, and he had declined. The most reasonable inference is that defendant's change of heart was motivated by Albert's admissions.

*State v. Tanner*, 304 Or 312, 315, 745 P2d 757 (1987). In *Tanner*, the court explained:

> "Unlike the Fourth Amendment exclusionary rule, which has been predicated in recent years on deterrence of police misconduct, *see, e.g., United States v. Leon*, 468 US 897, 905-08, 104 S Ct 3405, 82 L Ed 2d 677 (1984), the exclusionary rule of section 9 is predicated on the personal right of a criminal defendant to be free from an 'unreasonable search, or seizure,' *State v. Davis*, 295 Or 227, 231-37, 666 P2d 802 (1983); *State v. Laundy*, 103 Or 443, 494, 204 P 958, 206 P 290 (1922) (adopting the former Fourth Amendment rationale expressed in such early United States Supreme Court cases as *Weeks v. United States*, 232 US 383, 34 S Ct 341, 58 L Ed 652 (1914)). That is, the search or seizure must violate the defendant's section 9 rights before evidence obtained thereby [can] be suppressed; a defendant's section 9 rights are not violated merely by admitting evidence obtained in violation of section 9. The issue in this case thus is not whether the police violated section 9—that much is conceded—but whether the police violated defendant's section 9 rights."

304 Or at 315-16 (footnote omitted). Thus, under the section 9 exclusionary rule, the only person who may claim its protections is a person whose own rights have been violated. *State v. Kosta*, 304 Or 549, 553-54, 748 P2d 72 (1987).

At the time that defendant was confronted by the police regarding his father's statements, no personal right of defendant to be free from an unlawful search or seizure had been violated. Although the police traded on a prior illegality (the detention of Albert) to obtain the statements from Albert that they used to confront defendant, the *illegal* conduct was directed only at Albert. In essence, defendant's own conduct then "waived" or "relinquished" his privacy interest in the baggies and triggered a lawful search of the remainder of the car based on probable cause and exigent circumstances. Because the policy underlying the section 9 exclusionary rule is vindication of the violation of a personal privacy interest, as distinguished from the deterrence of police misconduct, it follows that, in the absence of a constitutional violation of

defendant's personal rights that occurred before his voluntary production of the drugs, there is no ground for suppression. Vindication of the prior illegality can occur only by suppressing the evidence as to the individual (Albert) whose rights have been violated.

*State v. Laundy,* 103 Or 443, 204 P 958, *reh'g den,* 103 Or 443 (1922), further informs our conclusion that defendant is not entitled to exclusion of the evidence under Article I, section 9, because no personal section 9 right of his was implicated until after the baggies were seized. In *Laundy,* the defendant was charged with joining an organization in violation of a statute that made it unlawful to join organizations that promoted criminal syndicalism. The state sought to have a booklet that had been seized from a hall where the organization met admitted into evidence. The booklet contained evidence that, in the state's view, demonstrated that membership in the organization was unlawful. The booklet had been found in the desk of a third person, Myers, and had been seized unlawfully during the defendant's arrest. The court, in ruling that the evidence was admissible against the defendant, explained,

> "If any articles were unlawfully taken from Myers' desk, the defendant cannot complain, for the reason that if the right of any person was violated it was that of Myers or that of some other third person, and not that of the defendant. * * * It is our conclusion that no constitutional right of the defendant was violated by the taking of any of the state's exhibits, even though it be assumed that the constitutional right of some other person or persons was violated."

103 Or at 498-99. The facts in *Laundy* are analogous to the facts in this case. In both cases, the argument that evidence should be suppressed was dependent on a prior police illegality involving a third person.

■ The answer to defendant's argument is no different under the Fourth Amendment. In *Alderman v. United States,* 394 US 165, 89 S Ct 961, 22 L Ed 2d 176, *reh'g den,* 394 US 939 (1969), the defendants were charged with conspiring to transmit to the Soviet Union information relating to the national defense of the United States. After their convictions, they learned that a portion of the evidence introduced

against them was obtained as a result of illegal wiretapping of conversations between themselves and other individuals.

> "Retrial [was demanded] if any of the evidence used to convict him was the product of unauthorized surveillance, regardless of whose Fourth Amendment rights the surveillance violated. At the very least, it is urged that if evidence is inadmissible against one defendant or conspirator, because tainted by electronic surveillance illegal as to him, it is also inadmissible against his codefendant or coconspirator."

*Alderman*, 394 US at 171. The court answered,

> "This expansive reading of the Fourth Amendment and of the exclusionary rule fashioned to enforce it is admittedly inconsistent with prior cases, and we reject it. The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence.

> "* * * * *

> "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. * * * There is no necessity to exclude evidence against one defendant in order to protect the rights of another. No rights of the victim of an illegal search are at stake when the evidence is offered against some other party. The victim can and very probably will object for himself when and if it becomes important for him to do so.

> "What petitioners appear to assert is an independent constitutional right of their own to exclude relevant and probative evidence because it was seized from another in violation of the Fourth Amendment. But we think there is as substantial difference for constitutional purposes between preventing the incrimination of a defendant through the very evidence illegally seized from him and suppressing evidence on the motion of a party who cannot claim this predicate for exclusion.

> "The necessity for that predicate was not eliminated by recognizing and acknowledging the deterrent aim of the rule. * * * The deterrent values of preventing the incrimination of those whose rights have been violated have been

considered sufficient to justify the suppression of probative evidence even though the case against the defendant is weakened or destroyed. We adhere to that judgment. But we are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth."

*Alderman,* 394 US at 171-75; *see also Minnesota v. Carter,* 525 US 83, 88-89, 119 S Ct 469, 142 L Ed 2d 373 (1998) (a defendant must be able to show the violation of his or her own Fourth Amendment rights). Because defendant has not established a violation of his personal expectation of privacy under the Fourth Amendment, he cannot prevail on his federal claim for suppression.[6]

Affirmed.

---

[6] *See also United States v. Salvucci,* 448 US 83, 92-94, 100 S Ct 2547, 65 L Ed 2d 619 (1980) (defendants charged with crimes of possession may claim the benefits of exclusionary rule only if their own Fourth Amendment rights have in fact been violated); *Rawlings v. Kentucky,* 448 US 98, 100 S Ct 2556, 65 L Ed 2d 633 (1980) (the mere fact that the defendant owned the drugs found in the purse of another did not establish a violation of his Fourth Amendment rights); *Rakas v. Illinois,* 439 US 128, 99 S Ct 421, 58 L Ed 2d 387, *reh'g den,* 439 US 1122 (1979) (petitioners, who asserted neither a property nor a possessory interest in the automobile searched nor an interest in the property seized, and who failed to show that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the vehicle in which they were merely passengers, were not entitled to challenge the search of those areas).