Submitted on record and briefs December 17, 2004, reversed and remanded December 21, 2005, respondent's petition for reconsideration filed February 22 allowed by opinion May 3, 2006
See 205 Or App 528, _____ P3d _____ (2006)

# STATE OF OREGON,
## *Respondent,*

*v.*

# RICHARD DESHAWN MASTIN,
## *Appellant.*

## 0205-32755; A121763

124 P3d 1275

M. Christian Bottoms filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, olicitor General, and Janet A. Metcalf, Assistant Attorney General, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant appeals his convictions for delivery of a controlled substance (methamphetamine), ORS 475.992(1)(b), possession of a controlled substance (methamphetamine), ORS 475.992(4)(b), and criminal forfeiture, Or Laws 2001, ch 666, § 12, arguing that the trial court erred in denying his motion to suppress evidence of the contents of his backpack, his identification, oral statements he made, and methamphetamine discovered in the trunk of the vehicle in which he was a passenger. Defendant raises three assignments of error, arguing that (1) because he was a passenger, the officer had no authority to stop him in the course of a traffic investigation, (2) the officer exceeded his statutory authority in continuing to search for contraband after finding less than an ounce of marijuana in his backpack, and (3) the inventory search exception is inapplicable. We reverse and remand.

■ In reviewing a denial of a motion to suppress, we are bound by the trial court's findings of historical facts as long as there is "constitutionally sufficient evidence in the record to support those findings." *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). While driving past a parking lot, Deputy Green saw a car leave the parking lot without stopping before crossing the sidewalk and without stopping before entering traffic. Green also noticed that the car did not display a front license plate. He decided to investigate the traffic infractions. While Green was making a U-turn, the car reversed back into the parking lot. By the time Green pulled into the parking lot, the car was parked and both the driver, Cordova, and defendant, a passenger in the car, were walking away from the car. Green got out of his patrol car and directed Cordova and defendant to "get back into the vehicle." As Cordova returned to the car, Green detected an odor of burnt marijuana coming from Cordova. Green then detected the same odor emanating from defendant and the car. After Cordova and defendant had reseated themselves in the car, Green asked defendant, "[W]here's the marijuana[?]," to which defendant replied, "I haven't smoked any marijuana."

Green then activated the overhead lights on his patrol car. Green returned to Cordova's car, requested and

obtained identification from Cordova and defendant, and went back to his patrol car to run an identification check. The identification check did not turn up any outstanding warrants; however, both Cordova's and defendant's driver's licenses were suspended. Green asked Cordova for consent to search the car, but Cordova replied that he could not consent because it was a company car and "Terry" owned it. Cordova furnished Green with Terry's telephone number, and Green telephoned Terry. When Green asked Terry if he could search the car, Terry replied, "It's not my vehicle. I'm just the lender." In addition, Cordova and defendant told Green inconsistent stories about their employment. Cordova eventually consented to a search of the car.

Before searching the car, Green asked defendant to step out of the vehicle and to remove all his belongings from the car. Defendant removed a backpack that was resting on the passenger-side floor between his legs. Green asked if he could search the backpack, and defendant consented. In the backpack, Green first discovered a silver container emitting a "strong odor of marijuana." Green opened the container, and inside found a partially smoked cigar stuffed with marijuana and a small amount of unburned marijuana. Green then found a large roll of money amounting to approximately $9,000 and four cell phones. Defendant became nervous when Green found the money and said, "I don't want any— anyone to see I have money."

Green then searched the interior of the car but uncovered nothing of interest. Next, Green obtained the keys to the car for the purpose of searching the trunk. The trunk contained clothing and a partially opened root beer box. Without moving the box, Green saw a clear Tupperware container that had a white, crystal-like substance inside, which, from his experience, Green believed to be methamphetamine. Green testified, "It's just there. I looked in and I saw a see-through gla—it looked to be Glad blue Tupperware."

Defendant was indicted for delivery of a controlled substance, possession of a controlled substance, and criminal forfeiture. Defendant filed a motion to suppress the evidence, arguing that Green unlawfully stopped defendant, Green had no probable cause to search the vehicle or the backpack,

and no exception to the warrant requirement applied. The trial court denied the motion, reasoning that defendant was not unlawfully stopped because Green had the authority to stop defendant as part of the traffic investigation and thus had authority to question defendant; that, in any event, Green had reasonable suspicion when he smelled the marijuana; and that the doctrine of inevitable discovery applied due to the imminent impoundment and inventory of the car. Defendant then entered a conditional guilty plea contingent on the result of this appeal.

On appeal, defendant raises three assignments of error, making the same arguments as at trial. Defendant first argues that the trial court erred in denying his motion to suppress all the evidence because he was unlawfully stopped and the ensuing searches were "exploitations" of that unlawful stop. Second, defendant asserts that, even if the search of his backpack was lawful, the trial court erred in denying his motion to suppress the evidence of the methamphetamine because Green had only reasonable suspicion of a marijuana offense, and once Green discovered less than an ounce of marijuana in defendant's backpack, Green lacked probable cause to search for more drugs. Third, defendant assigns error to the trial court's ruling that the inevitable discovery doctrine applied to the discovery of the methamphetamine in the trunk. In response to defendant's assignments of error, the state argues, respectively, that the stop of defendant was not unlawful and, if it was, the ensuing search was not an "exploitation" of that unlawful stop, that Green had probable cause to search further after finding the marijuana, and that the doctrine of inevitable discovery applied because Green was required to tow and inventory the car after discovering that both Cordova and defendant had suspended licenses.

We begin with defendant's first assignment of error. The question presented is whether the initial stop of defendant was unlawful and, if so, whether that unlawful police conduct invalidated defendant's consent to search his backpack. *State v. Hall*, 339 Or 7, 20, 115 P3d 908 (2005). The encounter began as a traffic investigation of Cordova; thus, Green's authority was limited by ORS 810.410(3)(b), which provides that a police officer

"[m]ay stop and detain a person for a traffic violation for the *purposes of investigation reasonably related to the traffic violation*, identification and issuance of citation."

(Emphasis added.)

■ The purpose of ORS 810.410 is to decriminalize traffic infractions. *State v. Wright*, 152 Or App 282, 285, 954 P2d 809, *rev den*, 327 Or 448 (1998). Without reasonable suspicion of a crime, an officer's authority is strictly limited to a reasonable investigation of the traffic infraction. *State v. Ehret*, 184 Or App 1, 8-9, 55 P3d 512 (2002) (*Ehret I*); *see also* ORS 810.410(3)(c) (authorizing officer to inquire into circumstances that give rise to a reasonable suspicion of criminal activity). Although a passenger, in most cases, has no relation to an investigation of a traffic infraction, the stop of a passenger during a traffic stop is incidental and does not amount to an unconstitutional seizure. *State v. Ehret*, 184 Or App 14, 17, 55 P3d 518 (2002), *rev den*, 337 Or 84 (2004) (*Ehret II*). However, aside from the initial stop of the vehicle, a passenger is ordinarily free to leave and is not part of the traffic investigation absent reasonable suspicion of criminal activity. *Id.* at 17 (passenger was not stopped because he was free to leave and walk away while driver was being questioned); *see also Wright*, 152 Or App at 286 (officer did not have authority to ask passenger's name during traffic stop); ORS 810.410(3)(c) (officer may inquire into circumstances arising during traffic investigations that give rise to "a reasonable suspicion of criminal activity"). But this case presents a different scenario. Here, the car was already stopped and defendant had already left the vehicle when the officer approached.

■ Green testified that defendant was not part of the traffic investigation, but "was not free to leave." Green's directive to defendant to "get back in the vehicle" was a stop. *See State v. Johnson*, 105 Or App 587, 590, 805 P2d 747 (1991) (a stop occurs when "a reasonable person would have believed he was not free to leave"). That stop had no relation to the traffic investigation and was not incidental to stopping the vehicle and the driver because the vehicle was already stopped. In addition, at that point, Green was investigating

only the traffic infractions and did not have reasonable suspicion of criminal activity. Accordingly, we conclude that the stop of defendant was illegal.

■     We must next determine whether that unlawful stop of defendant invalidated defendant's consent to search the backpack. In *Hall*, the Supreme Court identified two ways in which unlawful police activity could invalidate a defendant's consent: (1) the unlawful police conduct rendered the defendant's consent involuntary; and (2) the police "exploited" the unlawful activity in obtaining the defendant's consent. 339 Or at 20-21. Because defendant argues only that the police exploited the illegal stop, we address only that issue and not whether the illegal stop rendered defendant's consent involuntary. *Id.* at 22.

■ ■     Although, in an unlawful exploitation situation, there must be a causal connection between the unlawful stop and the subsequent consent to search, our inquiry is not merely a "but for" test. *Id.* at 25. Once the minimal "but for" connection is established, the burden is on the state to prove "that the evidence did not derive from the preceding illegality." *Id.* In order to satisfy that burden, the state must prove that:

> "(1) the police inevitably would have obtained the disputed evidence through lawful procedures even without the violation of the defendant's rights under Article I, section 9; (2) the police obtained the disputed evidence independently of the violation of the defendant's rights under Article I, section 9; or (3) the preceding violation of the defendant's rights under Article I, section 9, has such a tenuous factual link to the disputed evidence that that unlawful police conduct cannot be viewed properly as the source of that evidence."

*Id.* (citations omitted).

The state's argument falls under the third category identified in *Hall*. Specifically, the state argues that, even if the initial stop of defendant was unlawful, Green obtained inculpatory evidence—the odor of burnt marijuana on Cordova and the car—independent of the unlawful stop. In addition, the state argues that this case is indistinguishable from *State v. Rodriguez*, 317 Or 27, 845 P2d 399 (1993), in

which the Supreme Court affirmed the trial court's denial of a motion to suppress. We reject those arguments and conclude that the state has not met its burden of proving that defendant's consent was not obtained through exploitation of the unlawful stop.

In *Hall*, the Supreme Court explained:

"After a defendant shows a minimal factual nexus between unlawful police conduct and the defendant's consent, then the state has the burden to prove that the defendant's consent was independent of, or only tenuously related to, the unlawful police conduct. Deciding whether the state has satisfied that burden requires a fact-specific inquiry into the totality of the circumstances to determine the nature of the causal connection between the unlawful police conduct and the defendant's consent. A causal connection requiring suppression may exist because the police sought the defendant's consent solely as the result of knowledge of inculpatory evidence obtained from unlawful police conduct. A causal connection requiring suppression also may exist because the unlawful police conduct, even if not overcoming the defendant's free will, significantly affected the defendant's decision to consent."

339 Or at 34-35. The court then identified three considerations important in determining whether, in light of the specific facts of a case, the state has proved that a defendant's consent was not a product of preceding unlawful conduct:

"(1) the temporal proximity between the unlawful police conduct and the defendant's consent, (2) the existence of any intervening circumstances, and (3) the presence of any circumstances—such as, for example, a police officer informing the defendant of the right to refuse consent—that mitigated the effect of the unlawful police conduct."

339 Or at 35. Applying those considerations, the Supreme Court in *Hall* held that the state had not met its burden. *Id.* at 36.

The circumstances in *Hall* are similar to the circumstances in this case. In *Hall*, the officer observed the defendant, on several occasions, nervously glance at him as the officer drove by in his patrol car. The officer then turned

around and motioned the defendant over to him. The defendant complied, and the officer then obtained the defendant's identification in order to perform a warrant check. While waiting for the results of the warrant check, the officer noticed a bulge in the defendant's jacket and subsequently obtained defendant's consent to search him. During the search, the officer found a vial of methamphetamine in one of defendant's jacket pockets. 339 Or at 10-11.

The Supreme Court first determined that the defendant had been unlawfully stopped. *Id.* at 19. Next, the court conducted a thorough examination of its "exploitation" jurisprudence. Specifically, the court discussed two of its prior decisions where it had concluded that the state had met its burden, *Rodriguez* and *State v. Kennedy*, 290 Or 493, 624 P2d 93 (1981). The court observed that, in those cases,

> "those defendants both had volunteered to allow a search without any police prompting and, in *Rodriguez*, [ ] the police had provided the defendant with *Miranda* warnings before questioning him * * *. In the absence of such intervening circumstances—or other circumstances mitigating the effect of the unlawful police conduct—this court has required suppression under facts similar to those at issue in *Kennedy* and *Rodriguez*."

*Hall*, 339 Or at 34. The court ultimately concluded that, due to the temporal proximity of the unlawful stop to the ensuing consent and the failure of the state to prove any other intervening or mitigating circumstances, such as in *Kennedy* and *Rodriguez*, suppression of the evidence was required. *Id.* at 36.

Here too, the ensuing consent was very close temporally to the unlawful stop. Also, there were no intervening or mitigating circumstances present, such as a spontaneous consent as in *Kennedy* and *Rodriguez* or any other case where suppression was not required. *See, e.g., State v. Jones*, 248 Or 428, 433-34, 435 P2d 317 (1967) (legal arrest before search breaks casual chain). On the facts of this case, we conclude that the state has not met its burden to prove that defendant's consent was not a "product of the preceding violation of defendant's rights * * *." *Hall*, 339 Or at 36. Therefore, the trial court erred in denying defendant's motion to suppress

all evidence obtained from defendant's consent to search his backpack, the identification of defendant, and any oral statements made by defendant during the encounter.

■ We need not address defendant's second assignment of error because we conclude that defendant's consent to search his backpack was invalid. We thus turn to defendant's third assignment of error: whether the trial court erred in denying defendant's motion to suppress the methamphetamine found in the trunk. Defendant argues that the search of the trunk was a continuing exploitation of the unlawful stop and that, although the car was required to be impounded before it was towed, Green searched the trunk before the car was legally impounded, and, therefore, the search was an invalid inventory search. The state responds that the doctrine of inevitable discovery applies due to the required impoundment and inventory search. We agree with the state.

Once Green discovered that Cordova's license was suspended and decided to have the car towed,[1] Green was required to conduct an inventory search, which necessarily includes a search of the trunk.[2] While searching the trunk, Green observed the open root beer box and the transparent Tupperware container holding the methamphetamine in plain view. Green did not open any closed containers in viewing the evidence. *See, e.g.*, *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986) ("Transparent containers * * * announce their contents."). Those facts are sufficient to support the state's inevitable discovery argument. *See, e.g.*, *State v. Miller*, 300 Or 203, 226, 709 P2d 225 (1985) (inevitable discovery requires that "proper and predictable investigatory procedures * * * inevitably would have resulted in the discovery of the evidence"). The search of the trunk therefore was not an exploitation of the unlawful stop.[3] *See Hall*, 339 Or at

---

[1] ORS 809.720(1)(a) grants the police authority to impound a vehicle if an officer has probable cause to believe that the offense of driving while suspended has been committed in violation of ORS 811.175 or ORS 811.182.

[2] Section 15.602(C)(2)(b) of the Multnomah County Code requires that an officer search "[a]ny locked compartments including * * * locked vehicle trunks * * * if the keys are available to be released with the vehicle to the third-party towing company * * *." In this case, the keys were made available for release.

[3] In any event, Cordova consented to the search of the trunk, and defendant does not argue that Cordova's consent was invalid.

25 (proof that evidence would have been inevitably discovered satisfies state's burden of proving that discovery of the evidence was not a product of unlawful police conduct). Accordingly, the trial court did not err in denying defendant's motion to suppress the methamphetamine based on the doctrine of inevitable discovery.

In conclusion, because Green unlawfully stopped defendant and the state did not meet its burden of proving that defendant's consent was not a product of the unlawful stop, the trial court erred in denying defendant's motion to suppress all the evidence obtained from defendant's backpack, any oral statements made by defendant, and defendant's identification. However, because the methamphetamine discovered in the trunk of the car was subject to the doctrine of inevitable discovery, the trial court did not err in denying defendant's motion to suppress that evidence.

Reversed and remanded.