On respondent's petition for reconsideration filed October 19, 2011, reconsideration allowed; former opinion (236 Or App 5, 237 P3d 853) and disposition withdrawn; affirmed January 25, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GARY SMITH,
aka Gary Smith, Jr.,
*Defendant-Appellant.*

Multnomah County Circuit Court
070230679; A138276

270 P3d 382

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Tiffany Keast, Assistant Attorney General, for petition.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

## BREWER, C. J.

The state petitions for reconsideration of our decision in *State v. Smith*, 236 Or App 5, 237 P3d 853 (2010), arguing that our conclusion that defendant's consent to a search of his person was invalid is erroneous in light of the Supreme Court's overriding analysis in *State v. Ashbaugh*, 349 Or 297, 244 P3d 360 (2010) (*Ashbaugh II*). We agree and grant reconsideration, withdraw our former opinion and disposition, and affirm defendant's convictions because, in light of *Ashbaugh II*, the trial court properly denied defendant's motion to suppress.

We take the undisputed facts from our prior opinion.

"Defendant was a passenger in a car that was stopped for making an improper signal before turning. Officer Manzella approached the car and determined that the driver's license had been suspended. Manzella also asked defendant for his name, which Manzella wrote down. Manzella determined that, pursuant to a police policy, the car needed to be towed. Manzella wrote out a citation, which he handed to Officer Hart, who approached the driver's side of the car. Manzella approached the passenger side of the car, asked defendant to step out of the car, and as defendant was stepping out, Manzella asked defendant, 'Do you have anything on you you shouldn't have, do you have any weapons, anything like that?' Defendant told Manzella that he had a pipe and several rocks of crack cocaine in his possession. Manzella seized those items and arrested defendant for possession of a controlled substance. Although Manzella asked defendant to step out of the car because he intended to have it towed, he did not communicate that reason to defendant. Nor did Manzella communicate to defendant that he was, or was not, free to leave. The trial court found that defendant subjectively did not feel free to leave."

*Smith*, 236 Or App at 7-8.

Consistently with our prior decision in *State v. Lantzsch*, 229 Or App 505, 214 P3d 22 (2009), *vac'd*, 349 Or 663, 249 P3d 1281 (2011) (*Lantzsch I*), we concluded that defendant's subjective belief that he had not been free to leave was objectively reasonable and that, accordingly, the

trial court had erred in denying defendant's motion to suppress. *Smith*, 236 Or App at 14-15. We noted several similarities between this case and *Lantzsch I*:

> "First, as we noted in *Lantzsch*, an officer's unexpressed reasons for approaching and questioning someone are 'simply not relevant' when the question is whether a reasonable person *in the defendant's position* could have believed that an officer had significantly restricted his or her liberty or freedom of movement. * * * Thus, although in the present case, it appears that Manzella had a valid reason related to the traffic stop for asking defendant to step out of the car (because Manzella intended to have it towed), that reason was not expressed to defendant or the driver at the time defendant was asked to step out, and therefore, on this record, does not inform what a reasonable person in defendant's situation would have thought.

> "Second, in this case, as in *Lantzsch*, there was a second officer on the scene. Third, as in *Lantzsch*, defendant was not told he was free to leave. Finally, as in *Lantzsch*, the officer immediately questioned defendant about contraband, rather than pursuing further inquiry or taking further action related to the traffic stop. The factual difference that defendant here was questioned about contraband immediately upon stepping out of the car, whereas the defendant in *Lantzsch* was asked to step to the back of the car first is a minor distinction, at best, that has little bearing on whether a reasonable person in defendant's position could feel that his liberty had been significantly restricted. We thus conclude, as we did in *Lantzsch*, that the 'objective' inquiry under the [*State v.*] *Holmes*[, 311 Or 400, 410, 813 P2d 28 (1991),] formulation leads to the conclusion that a person in defendant's position could have believed that his liberty and freedom of movement had been restricted and that that belief was objectively reasonable under the circumstances."

*Smith*, 236 Or App at 14-15 (emphasis in the original; citations omitted).

In *Ashbaugh II*, the Supreme Court reversed our decision in *Ashbaugh I* upon which we had based our analysis in *Lantzsch I*. In *Ashbaugh II*, the Supreme Court "abandon[ed] forthrightly the subjective component" of its prior

case law and set out the following template for determining whether a person has been seized:

> "A 'seizure' of a person occurs under Article I, section 9, of the Oregon Constitution: (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances *would* believe that (a) above has occurred."

349 Or at 316. As the court indicated, the guiding principle in determining whether an encounter is a constitutionally significant seizure is whether the officer has manifested a "show of authority" that restricts an individual's "freedom of movement." *Id.* The Supreme Court subsequently vacated our decision in *Lantzsch I* and remanded it for reconsideration in light of *Ashbaugh II*. On remand, we applied the Supreme Court's overriding analysis and concluded that there had been no "show of authority" such that the defendant had been stopped:

> "Although * * * the deputy here did not tell defendant that he was free to leave, there were no weapons drawn and no evidence that the deputy raised his voice or otherwise spoke in a nonconversational manner when he asked defendant to step out of the car. Although a second officer was standing 'a few feet' behind the deputy, there was no evidence that the second officer made any show of authority toward defendant or, indeed, had any interaction with defendant at all. In that regard, the Supreme Court's observation in *Ashbaugh II* is pertinent: here, the deputy 'did not, for example, position himself and his fellow officer in a way that would suggest to defendant that [he] was surrounded,' and, thus, the mere presence of a second officer is, on this record, not a sufficient basis for us to conclude that the deputy's 'manner or actions' involved a 'show of authority.' *Ashbaugh II*, 349 Or at 317-18."

*State v. Lantzsch*, 244 Or App 336-37, 260 P3d 662 (2011) (*Lantzsch II*) (brackets in *Lantzsch II*). Accordingly, we concluded that the trial court had properly denied the defendant's motion to suppress.

The same result obtains here. Although in this case, as in *Lantzsch II*, Manzella did not tell defendant that he was

free to leave, there is no evidence that weapons were drawn or that Manzella raised his voice or otherwise spoke in a non-conversational manner. As in *Lantzsch II*, there was a second officer present, but that second officer was standing alongside the driver's side of the car—defendant was on the passenger side—and thus the officers had not positioned themselves in a way to suggest that defendant was surrounded. And finally, as in *Lantzsch II*, the officer's question whether defendant possessed any drugs or weapons was not a constitutionally significant "show of authority," and neither was his request that he step out of the car. It follows under *Ashbaugh II* that the officer did not "intentionally and significantly" interfere with defendant's liberty or freedom of movement when he asked defendant to get out of the car and that a reasonable person in defendant's situation would not have believed that the officer had done so. Accordingly, we conclude that the trial court properly denied defendant's motion to suppress.

Reconsideration granted; former opinion and disposition withdrawn; affirmed.