Submitted September 24, 2013, reversed and remanded December 24, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEFFREY JAMES CLEMONS,
*Defendant-Appellant.*

Douglas County Circuit Court
11CR0351FE; A149682

341 P3d 810

Peter Gartlan, Chief Defender, and Kyle Krohn, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals his judgment of conviction for unlawful possession of methamphetamine, ORS 475.894. He assigns error to the trial court's denial of his motion to suppress evidence obtained during a traffic stop of a car in which he was a passenger. The trial court concluded that a police officer unlawfully extended the traffic stop as to the driver but that defendant had not been seized. Defendant argues that he was illegally seized under both Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. Because defendant was unlawfully seized under the Fourth Amendment, and the discovery of the evidence was not sufficiently attenuated from the illegal seizure, we reverse and remand.

"A trial court's findings of historical fact are binding on appellate courts if there is constitutionally sufficient evidence in the record to support those findings. Our function is to decide whether the trial court applied legal principles correctly to those facts." *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993) (citations omitted). "The determination whether a person has been 'seized' * * * requires a fact-specific inquiry into the totality of the circumstances of the particular case." *Id.* at 78 (citations omitted). We review the denial of a motion to suppress for legal error. *State v. Ross*, 256 Or App 746, 747, 304 P3d 759 (2013).

The facts, as found by the trial court and supported by the record, are as follows. During a January evening, Deputy Tillett stopped a car on I-5, in which defendant was a passenger, for traffic violations. Defendant's wife had been driving; defendant was sitting in the passenger seat and the couple's three children were seated in the back. Tillett approached the car's passenger side and recognized defendant from discovering narcotics during a traffic stop in the same car one month earlier. Tillett noticed that both defendant and the driver appeared nervous, even after he told the driver that he would only be issuing a warning. Tillett later testified that most people who "are nervous initially * * * tend to calm down" when informed that they will only receive a warning. When the driver continued to appear nervous, Tillett asked for her driver's license. Upon checking

the driver's license with dispatch, he discovered that it had been suspended.

Tillett asked the driver to get out of the car to discuss the suspended license. After that discussion, he questioned her about defendant, his nervous behavior, and "if there [were] any illegal drugs or weapons in the vehicle." The driver replied that "she didn't think so but she didn't know what [defendant] had been doing." At that point, Tillett obtained the driver's consent to search the car. He then walked around to the passenger side and explained to defendant that the driver had given her consent to a search, that defendant needed to get out of the car so that the officer could search it, and that defendant was free to leave. Defendant responded that his children and wife were in the car and he was not going to leave.

Tillett requested support and, after another officer arrived, Tillett searched the car, including the trunk, where he found a backpack. Defendant, standing next to the officer during the search, identified the backpack as his. Tillett asked for and received defendant's consent to search the backpack, where he found a small glass case. He obtained defendant's consent to open the case, which contained syringes and a screen with a powdery white residue on it. Tillett field-tested the residue, and it tested positive for methamphetamine. Tillett then issued defendant a citation. At some point during the stop, the driver also received a citation for driving while suspended, though the timing of that citation is unclear.

Defendant moved to suppress evidence obtained during the traffic stop, arguing that he was unlawfully seized in violation of Article I, section 9, and the Fourth Amendment. After an evidentiary hearing, the trial court denied the motion to suppress, determining that the driver was unlawfully seized when Tillett extended the traffic stop without reasonable suspicion or probable cause, but that defendant was not unlawfully seized because he was "free to leave." Defendant was later convicted of unlawful possession of methamphetamine.

Defendant contends that he was unlawfully seized under both the state and federal constitutions when Tillett

questioned the driver about drugs and requested consent to search the car after the investigation into the traffic stop was completed. Defendant further argues that, because a traffic stop is a seizure of the driver and passengers, the officer's unlawful extension of the stop as to the driver also applies to the passengers, particularly because the officer unlawfully extended the search before telling defendant he was free to leave. Defendant alternatively contends that he was seized because a reasonable person would not think that he was "free to leave" when he was on the I-5 shoulder without transportation other than the stopped car and while his wife and three children remained with the car. In response, the state contends that defendant was not seized and that, even if defendant initially was seized at the time of the traffic stop, that seizure ended when Tillett told defendant that he was free to leave.

We begin with an analysis of defendant's argument under Article I, section 9. *See Sterling v. Cupp,* 290 Or 611, 614, 625 P2d 123 (1981) ("The proper sequence is to analyze the state's law, including its constitutional law, before reaching a federal constitutional claim."). Article I, section 9, provides that the people have the right "to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." Of the many "encounters between law enforcement officers and citizens, * * * 'only some implicate the prohibition in Article I, section 9, against unreasonable "seizures."'" *State v. Backstrand,* 354 Or 392, 398-99, 313 P3d 1084 (2013) (quoting *State v. Ashbaugh,* 349 Or 297, 308, 244 P3d 360 (2010)). A "temporary restraint of a person's liberty for the purpose of criminal investigation—*i.e.,* a 'stop'—qualifies as a 'seizure,' * * * and must be justified by a reasonable suspicion of criminal activity." *State v. Rodgers/ Kirkeby,* 347 Or 610, 621, 227 P3d 695 (2010). A stop is distinct from a "mere conversation" or "noncoercive encounter" between an officer and a person "that involves no restraint of liberty" and "does not implicate the liberty protections provided in Article I, section 9." *Id.*

Under Article I, section 9, "[p]assengers in a stopped vehicle—whether lawfully or unlawfully stopped—are not seized merely by virtue of their status as passengers." *Ross,* 256 Or App at 765. Instead, a passenger is seized only

when there "'is the imposition, either by physical force or through some "show of authority," of some restraint on the individual's liberty.'" *Backstrand*, 354 Or at 399 (quoting *Ashbaugh*, 349 Or at 309). The test is objective: "Would a reasonable person believe that a law enforcement officer intentionally and significantly restricted, interfered with, or otherwise deprived the individual of his or her liberty or freedom of movement?" *Id.* A citizen's discomfort with police interaction does not make the contact a seizure; rather, "[e]xplicitly or implicitly, an officer must convey to the person with whom he is dealing, either by word, action, or both, that the person is not free to terminate the encounter or otherwise go about his or her ordinary affairs." *Id.* at 401. Asking for consent to search without more "to restrict a person's liberty and freedom of movement" by verbal or physical means does not constitute a "show of authority." *Ashbaugh*, 349 Or at 317. Under Article I, section 9, a court looks at whether an officer's manner or actions were accompanied "by any physical action that could be construed as threatening or coercive." *Id.*

For instance, in *State v. Courtney*, 242 Or App 321, 333, 255 P3d 577, *rev den*, 351 Or 401 (2011), we concluded that police had restricted the defendant's freedom of movement by a "show of authority" because the officer told the defendant passenger to stay where he was, there was a back-up officer close to the car, and the officer ordered the defendant to put his hands on top of his head with his fingers interlaced. Here, however, there was no similar "show of authority," because Tillett told defendant that he was free to leave and the back-up deputy was physically distant from defendant. Because there was no "show of authority" towards defendant that seized him as a passenger under Article I, section 9 jurisprudence, defendant was not seized, and there is no state constitutional basis for suppression.

Under the Fourth Amendment, however, defendant was unlawfully seized. That amendment provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." As the Oregon Supreme Court has recognized, under the Fourth Amendment, "for the duration of a traffic stop, a police officer effectively seizes

'everyone in the vehicle,' the driver and all passengers." *State v. Bailey*, 356 Or 486, 507, 338 P3d 702 (2014) (quoting *Arizona v. Johnson*, 555 US 323, 327, 129 S Ct 781, 172 L Ed 2d 694 (2009); *Brendlin v. California*, 551 US 249, 255, 127 S Ct 2400, 168 L Ed 2d 132 (2007)). Additionally, "[a]n officer may ask passengers questions during a traffic stop that are unrelated to a lawful purpose for the stop, but only if the inquiry does not measurably extend the stop." *Id.*

Applied to the facts of this case, then, under the Fourth Amendment, defendant was seized when Tillett initiated the traffic stop. The trial court determined that Tillett unlawfully extended the traffic stop without reasonable suspicion or probable cause but that only the driver was unlawfully seized; the trial court concluded that defendant was not prevented from leaving the car and that, therefore, under *State v. Ehret (A111249)*, 184 Or App 14, 17, 55 P3d 518 (2002), *rev den*, 337 Or 84 (2004) (*Ehret*), he was not seized. The court erred, however, in relying on *Ehret*, which analyzes a passenger stop under Article I, section 9, without addressing defendant's Fourth Amendment argument. Based on the trial court's conclusion that the officer unlawfully extended the traffic stop without reasonable suspicion or probable cause, we conclude that defendant likewise was unlawfully seized under the Fourth Amendment. The fact that Tillett told defendant that he was "free to leave" does not compel a contrary result, because Tillett did not communicate that permission until after the stop was unlawfully extended by his inquiry into matters unrelated to the reason for the stop. *See U.S. v. Washington*, 490 F3d 765, 774 (9th Cir 2007) ("Without reasonable suspicion, a person 'may not be detained even momentarily.'" (Quoting *Florida v. Royer*, 460 US 491, 498, 103 S Ct 1319, 75 L Ed 2d 229 (1983))).

The central issue, then, is whether the unlawful seizure of defendant warrants suppression of the evidence found in defendant's backpack. "It is well established that, under the 'fruits of the poisonous tree' doctrine, evidence obtained subsequent to a violation of the Fourth Amendment is tainted by the illegality and is inadmissible, despite a person's voluntary consent, unless the evidence obtained was 'purged of the primary taint.'" *Washington*, 490 F3d at 774

(quoting *Wong Sun v. United States,* 371 US 471, 488, 83 S Ct 407, 9 L Ed 2d 441 (1963)).

In *Bailey,* the Oregon Supreme Court recently considered the admissibility of evidence tainted by illegality under the Fourth Amendment, and concluded that "three factors * * * determine whether the causal connection between unlawful police conduct and challenged evidence was sufficiently attenuated so as to purge the taint of illegality." 356 Or at 498. Those factors are (1) the temporal proximity between unlawful police conduct and the discovery of the evidence; (2) the presence of intervening circumstances, and (3) "particularly, the purpose and flagrancy of the official misconduct." *Id.* at 488-89 (citing *Brown v. Illinois,* 422 US 590, 95 S Ct 2254, 45 L Ed 2d 416 (1975)).

In this case, little or no time elapsed between the unlawful police conduct, Tillett's unlawful extension of the stop, and the discovery of the evidence at issue. The first factor, then, weighs toward suppression of the evidence. *See Bailey,* 356 Or at 505 (determining under the *Brown* test that, "because the temporal break between the unlawful detention and the discovery of the evidence was brief, that factor bears some weight in favor of suppression.")

The second factor is the existence of intervening circumstances. *Brown,* 422 US at 603. In this case, one possible intervening circumstance is Tillett informing defendant that he was "free to leave." The other possible intervening circumstance is defendant's consent, which we address below in the discussion of the third factor.

The significance of the intervening circumstance must be weighed with consideration of the officer's unlawful detention of defendant and "the degree to which [the discovery of evidence] was the direct consequence or objective of the unlawful detention." *Bailey,* 356 Or at 506. As further discussed below, Tillett told defendant that he was "free to leave" after the deputy had gained consent to search the car because Tillett suspected that defendant had drugs in the car. Under those circumstances, we need not reach the question of whether defendant was truly "free to leave," because, even if the seizure ended when defendant was told he was "free to leave" there was still insufficient attenuation of the

officer's illegal seizure of defendant from discovery of the evidence.

The third *Brown* factor is the purpose and flagrancy of the unlawful police conduct. 422 US at 604. "The focus of the purpose and flagrancy factor is on whether the stop was investigatory in nature and whether the unlawfulness of the police conduct should have been obvious to the officers." *Bailey*, 356 Or at 506. The facts in this case demonstrate that the unlawful extension of the stop constituted purposeful and flagrant police misconduct. As in *Bailey*, the stop should have concluded upon the officer issuing a citation based on the discovery that the driver's license was suspended, which should have happened much more quickly than the 45 minutes that defendant was detained. *See id.* at 507 (determining that the traffic stop was a flagrant unlawful detention because what should have been a five-minute stop lasted about 37 minutes). Unlawful police conduct "has a quality of purposefulness" when officers embark on a fishing expedition "for evidence in the hope that something might turn up." *See Brown*, 422 US at 605.

In *Brendlin*, the Supreme Court reasoned that:

"Holding that the passenger in a private car is not (without more) seized in a traffic stop would invite police officers to stop cars with passengers regardless of probable cause or reasonable suspicion of anything illegal. The fact that evidence uncovered as a result of an arbitrary traffic stop would still be admissible against any passengers would be a powerful incentive to run the kind of 'roving patrols' that would still violate the driver's Fourth Amendment right."

551 US at 263. That reasoning applies in this case. Tillett unlawfully extended the stop because he suspected that defendant had drugs in the vehicle. The officer had neither probable cause nor reasonable suspicion; in fact, his only basis for the search was his perception that the driver and defendant were nervous and his previous experience with defendant possessing drugs during a traffic stop. Therefore, the third factor weighs toward suppression of the evidence because the officer was engaged in a purposeful and flagrant fishing expedition. *See Brown*, 422 US at 605 (holding that the impropriety of a warrantless arrest made without

probable cause was "obvious" when detectives acknowledged the purpose of their action was investigatory); *Washington*, 490 F3d at 777 (holding that the fact that the officer, who had unlawfully seized the defendant, was on a "fishing expedition" for illegal evidence demonstrated the purpose and flagrancy of officer misconduct); *Bailey*, 356 Or at 508 (holding that the officers' investigatory detention of the defendant for more than 30 minutes after the lawful justification for the traffic stop ended showed purposeful conduct and that it "should have been obvious to the officers that they had extended the detention without regard to defendant's right to be free from an unreasonable seizure").

Finally, defendant's consent to search the backpack did not suffice to attenuate the police illegality. In *Washington*, police officers who had unlawfully seized the defendant were engaged in a "fishing expedition 'in the hope that something [illegal] might turn up,'" which resulted in an impermissible seizure. 490 F3d at 777 (quoting *Brown*, 422 US at 605). The Ninth Circuit determined that the defendant's consent to search his car, "even if voluntarily given, was not sufficient to purge the taint of his illegal seizure." *Id*. Other federal courts have reached similar conclusions. *See, e.g., US v. Johnson*, 427 F3d 1053, 1057 (7th Cir 2005) ("[I]n this case, the unlawful seizure was ongoing when [the defendant] voiced his consent, foreclosing the possibility that the consent was sufficiently attenuated from the unlawful conduct as to purge the taint."); *US v. Beauchamp*, 659 F3d 560, 573 (6th Cir 2011) (quoting *US v. Lopez-Arias*, 344 F3d 623, 629 (6th Cir 2003)) (citations omitted) ("The Supreme Court has held that if consent to search is obtained after an illegal seizure, the consent is tainted by the illegality and does not justify the search. We have repeatedly followed this precedent, holding that 'evidence obtained pursuant to the consent to search must be suppressed' if the consent was given after an illegal seizure."). Likewise here, defendant's consent to search his backpack was not an intervening circumstance sufficient to attenuate the police illegality.

Because defendant was unlawfully seized under the Fourth Amendment, and because the balance of the *Brown* factors establish that the discovery of the evidence was not

sufficiently attenuated from the illegal seizure, the evidence should have been suppressed.

Reversed and remanded.