Submitted November 25, 2015, affirmed April 19, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL STEVEN EVANS,
*Defendant-Appellant.*

Coos County Circuit Court
13CR1127; A156601

397 P3d 42

Peter Gartlan, Chief Defender, and Meredith Allen, Deputy Public Defender, Office of Public Defense Services, filed the opening brief for appellant. Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Meredith Allen, Deputy Public Defender, Office of Public Defense Services, filed the reply brief.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Susan G. Howe, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Hadlock, Chief Judge, and Lagesen, Judge.

## ORTEGA, P. J.

Defendant appeals his conviction for unlawful possession of methamphetamine, ORS 475.894. He assigns error to the trial court's denial of his motion to suppress evidence that was obtained after a state trooper, according to defendant, unlawfully extended a traffic stop of the truck in which defendant was a passenger. He contends that he was the subject of an unlawful seizure during the stop, under both Article I, section 9, of the Oregon Constitution[1] and the Fourth Amendment to the United States Constitution,[2] and that the evidence was obtained only as a result of the trooper's violation of defendant's rights against unlawful seizure. We conclude that defendant was not unlawfully seized under either Article I, section 9, or the Fourth Amendment, and therefore affirm the trial court's denial of the motion to suppress.

The parties do not dispute the following facts. At about 2:30 p.m., Trooper Crutchfield was patrolling Coos River Highway, near Coos Bay, when she saw a pickup truck crossing over the fog line on the right side of the highway. Crutchfield initiated a traffic stop for the violation of failure to drive within a lane, ORS 811.370, approached the driver's side of the truck, and recognized the driver as someone Crutchfield had encountered in her previous employment as a corrections officer. As Crutchfield explained the reason for the stop, she noticed that the driver was "clearly visibly upset," appeared to have been crying, and had a black eye that "appeared to be older in color." Crutchfield asked the driver about the black eye, and defendant, seated on the passenger side of the truck, answered that the driver had fallen off a ladder, an explanation that the trooper disbelieved because it was inconsistent with the injury.

Crutchfield continued to address her questions to the driver, who admitted that she did not have a valid license,

---

[1] Article I, section 9 provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search, or seizure[.]"

[2] The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"

and defendant handed Crutchfield the truck's registration, stating that the truck belonged to him and was not insured. Crutchfield returned to her car with the truck's registration and contacted dispatch about both the driver's and defendant's driving privileges, to determine if one of them could drive the truck away. She determined that the two shared the same last name.

Based on her observations of the driver and defendant's response to Crutchfield's question about the black eye, Crutchfield was concerned that the driver might have been physically assaulted by defendant and might be in danger of being physically harmed again. Consequently, when Crutchfield returned to the driver with the truck's registration, she asked the driver to step out of the truck so that they could have a conversation outside of defendant's hearing. Once the driver had gone to the back of the truck with Crutchfield, she asked the driver if defendant had hit or hurt her. Crutchfield wanted to offer her services, and even offered to "take her myself," but the driver declined help. During their "lengthy conversation," though, Crutchfield noticed that the driver had "physical signs on her that were consistent with * * * prolonged methamphetamine use." Crutchfield was aware, from her previous contacts with the driver, that she had used methamphetamine in the past, and asked the driver if she was using the drug. The driver admitted that she was and that there were used syringes in the truck under the driver's seat, and she gave Crutchfield permission to retrieve those items.

Crutchfield then returned to the truck and explained to defendant what the driver had said about the used syringes and that she had given Crutchfield permission to retrieve those items. Crutchfield asked defendant if the syringes belonged only to the driver or if defendant claimed ownership of them as well. Defendant admitted that the syringes belonged to both him and the driver and gave Crutchfield consent to retrieve the items under the driver's seat and to search the rest of the truck.

Crutchfield's search under the driver's seat produced a black bag containing not only the used syringes, but metal spoons with a white residue and cotton pieces. The

spoons were later sent to the Oregon State Police forensics lab where the white residue tested positive for methamphetamine, and defendant was ultimately indicted for one count of possession of methamphetamine. After a jury trial, defendant was convicted of that charge.

Before trial, defendant moved to suppress the evidence obtained during the stop, arguing primarily that Crutchfield violated defendant's state and federal constitutional rights against unlawful seizure when, after she completed the traffic stop, she investigated, without reasonable suspicion, whether the driver had been the victim of domestic assault by defendant. Defendant argued that, because the evidence was obtained as the result of the unlawful seizure of defendant, it should be suppressed. The state responded that, for the purposes of Article I, section 9, defendant, as the passenger in the traffic stop, was never "seized," because Crutchfield never exhibited a show of authority against, or used physical force on, defendant. The state further argued that any seizure was not unlawful, because Crutchfield had reasonable suspicion to extend the stop to investigate whether the driver had been the victim of a domestic assault.

The trial court denied the motion, concluding that the record supported reasonable suspicion that the crime of assault had occurred and that, consequently, Crutchfield's actions did not unlawfully extend the traffic stop and that, in any event, defendant had not been seized because Crutchfield did not make a show of authority sufficient to restrain defendant's liberty.

On appeal, defendant again argues that he was subject to an unlawful seizure under both Article I, section 9, and the Fourth Amendment when, after the traffic stop was completed, Crutchfield investigated whether the driver had been a victim of domestic violence perpetrated by defendant. Essentially, defendant raises the same two issues under both constitutional provisions: first, whether defendant was "seized" during the traffic stop and, second, if defendant was seized, whether the seizure was unlawful because Crutchfield did not have reasonable suspicion to extend the traffic stop in order to investigate whether defendant had assaulted the driver.

The denial of a motion to suppress is reviewed for legal error, and we defer to the trial court's findings of historical fact if there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

Defendant first argues that he was "seized," as that term is understood under Article I, section 9. A passenger is "seized," for purposes of Article I, section 9, when there is the imposition either by physical force or through some show of authority, of some restraint on the individual's liberty. *State v. Clemons*, 267 Or App 695, 699, 341 P3d 810 (2014) (internal quotation marks omitted). That test is objective, asking whether a reasonable person would believe that an officer "intentionally and significantly restricted, interfered with or otherwise deprived the individual of his or her liberty or freedom of movement." *Id.* (internal quotation marks omitted); *see also State v. Sherman*, 274 Or App 764, 362 P3d 720 (2015) (explaining the same).

In defendant's view, Crutchfield exercised sufficient authority to effect a restraint on his liberty. In particular, he argues that the trooper's retention of the truck registration information, when she knew that defendant was the owner, and her decision to ask dispatch about his driving privileges constituted the type of restraint against which Article I, section 9, protects. In support of that argument, defendant cites *State v. Thompkin*, 341 Or 368, 377, 143 P3d 530 (2006), *State v. Knapp*, 253 Or App 151, 154, 290 P3d 816 (2012), *vac'd on other grounds*, 356 Or 574, 342 P3d 87 (2014), and *State v. Lay*, 242 Or App 38, 44, 252 P3d 850 (2011). In each of those cases, an officer requested the defendant passenger's identification and interacted with him or her in such a manner that the defendant passenger knew that he or she was the subject of investigation. In *Thompkin*, officers approached both the driver's and the defendant passenger's sides of the car, requested identification from both the driver and the defendant, and ran a records check on each, and one officer remained on the defendant's side of the car, asking the defendant about their activities that night and whether the defendant had any drugs or weapons. 341 Or at 372. In *Knapp*, the officer observed a car in which the brake lights were not functioning and saw that the passenger's seat belt was not

fastened. The officer initiated a traffic stop to investigate both violations, requesting identification and performing a records check on both the driver and the defendant passenger. 253 Or App at 152. Finally, in *Lay*, the officer asked for the defendant passenger's identification and, after receiving it, while standing a few steps from the car, "very close to it [and] within earshot of the car's occupants," radioed dispatch, recited the defendant's and the driver's license numbers, and had dispatch run a "real quick" check for warrants and driving status. 242 Or App at 40, 44 (internal quotation marks omitted).

In each of those cases, the officer not only took the defendant passenger's identification, but his interaction with the defendant passenger indicated to the defendant that he or she was the subject of an investigation. *See also Sherman*, 274 Or App at 771 (concluding that the defendant passenger was subjected to a show of authority by the officer because, "unlike in cases involving defendants who were merely bystanders to stops directed at other occupants of a vehicle, defendant knew that [he] was the subject of an investigation").

We agree with the state that the facts in this case do not indicate that defendant's liberty was restrained either by physical force or a show of authority. In stopping the truck, the trooper approached the driver's side, addressed the purpose of the stop to the driver, and sought only the driver's identification. During the initial traffic stop, Crutchfield's interactions with defendant were instigated by defendant, who volunteered that the truck belonged to him and handed the trooper the registration information. As we explained in *State v. Sexton*, 278 Or App 1, 6, 378 P3d 83 (2016), in order for an officer's interaction with a passenger to rise to the level of a show of authority, "the officer's conduct must be something more than an inquiry or request for cooperation." (Internal quotation marks omitted.) Crutchfield's interaction with defendant during the initial conversation with the driver never amounted to anything more than inquiries and the acceptance of defendant's cooperation in completing the investigation of the driver's traffic violation. At no time during the initial traffic stop did Crutchfield show "by

word or action or both that defendant was not free to termi-nate the encounter." *See id.* at 5-6 (internal quotation marks omitted).

Defendant also argues that Crutchfield's actions constituted a show of authority when Crutchfield took the truck's registration information and used it to, as defendant argues, "investigate defendant." The trial court found that Crutchfield gave defendant's name to dispatch while not in defendant's presence, and that the purpose of the check was "to find out whether or not someone could drive the car home." The record supports those findings, and we agree with the trial court that nothing in those actions would reasonably lead defendant to believe that the investigation pertained to anything other than the driver's traffic infractions.

Defendant further contends that the circumstances surrounding Crutchfield's investigation of domestic assault constituted a restraint on his liberty. He argues:

> "Although [Crutchfield] apparently did not announce [her suspicion of domestic assault] in front of defendant, she asked the driver how she had gotten the bruise, and sepa-rated the driver from defendant, without ever telling him that he was free to go. A reasonable person in those circum-stances would believe that the trooper was restricting his liberty or freedom of movement."

We disagree that those actions constituted either physi-cal force or a show of authority directed at defendant. *See Clemons*, 267 Or App at 699. Crutchfield's question about the black eye was directed solely to the driver, and nothing in that question indicated that she was investigating defen-dant. The same can be said for Crutchfield's request to have a conversation with the driver outside the truck. Crutchfield said nothing to indicate that she was investigating defen-dant or that she was concerned for the driver's safety. In fact, the evidence indicates that Crutchfield specifically wanted to investigate the driver's safety without alerting defendant that she was investigating that concern.

Moreover, contrary to defendant's argument, the fact that Crutchfield did not tell defendant that he was free to leave did not constitute a restraint of his liberty. *See State v. Parker*, 266 Or App 230, 238, 337 P3d 936 (2014) (a

defendant passenger was not seized even though the officer did not tell him that he was free to leave at any point during the encounter); *State v. Smith*, 247 Or App 624, 628-29, 270 P3d 382 (2012) (concluding the same); *State v. Lantzsch*, 244 Or App 330, 336, 260 P3d 662 (2011) (concluding the same). Once Crutchfield asked the driver to step out of the truck, Crutchfield had no further interaction with defendant until she returned to ask about the used syringes. Throughout both the traffic stop and the domestic assault investigation, no weapon was drawn and Crutchfield did not raise her voice; she spoke to defendant only in a conversational manner. *See Smith*, 247 Or App at 629. We therefore conclude that defendant was not "seized" for purposes of Article I, section 9, because he was not subject to the imposition of restraint, either by physical force or a show of authority, during Crutchfield's investigation of the traffic stop or during Crutchfield's investigation of domestic assault. Consequently, the evidence of methamphetamine syringes and other drug paraphernalia was not obtained in violation of Article I, section 9.

Having concluded that the trial court did not err in denying defendant's motion to suppress under Article I, section 9, we turn to defendant's Fourth Amendment challenge. That challenge involves two questions: first, whether defendant was seized, and second, whether the seizure was unlawful because Crutchfield lacked reasonable suspicion of criminal activity. *Sexton*, 278 Or App at 9.

Unlike our analysis of traffic stops under Article I, section 9, under the Fourth Amendment, a police officer "effectively seizes everyone in the vehicle, the driver and all passengers" for the duration of a traffic stop. *Arizona v. Johnson*, 555 US 323, 327, 129 S Ct 781, 784, 172 L Ed 2d 694 (2009). Consequently, in answer to defendant's first issue, defendant was seized. Our analysis therefore turns to the second question of whether the trooper lacked reasonable suspicion to seize defendant. Defendant does not challenge the legality of the traffic stop, but challenges the trooper's extension of that stop to investigate an issue unrelated to the purpose of the traffic stop—namely, whether the driver had been the victim of domestic assault by defendant.

The Fourth Amendment allows an officer to conduct certain unrelated checks during an otherwise lawful traffic stop, but does not allow an officer to do so "in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez v. United States*, ___ US ___, 135 S Ct 1609, 1615, 191 L Ed 2d 492 (2015). "Under the Fourth Amendment, 'reasonable suspicion' entails a minimal level of objective justification for making a stop." *State v. Wiseman*, 245 Or App 136, 140, 261 P3d 76 (2011). The police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 US 1, 21, 88 S Ct 1868, 20 L Ed 2d 889 (1968); *see also United States v. Sokolow*, 490 US 1, 7, 109 S Ct 1581, 104 L Ed 2d 1 (1989) (an officer must be "able to articulate something more than an inchoate and unparticularized suspicion or hunch" (internal quotation marks omitted)). In reviewing whether the officer had reasonable suspicion based upon those articulated facts, the court looks at the totality of the circumstances, giving due weight to the factual inferences drawn by the officer and the trial court judge. *United States v. Arvizu*, 534 US 266, 277, 122 S Ct 744, 151 L Ed 2d 740 (2002). Although each factor, alone, may be susceptible of innocent explanation, the factors, taken together can form reasonable suspicion, "within the meaning of the Fourth Amendment." 534 US at 277-78; *see also Sokolow*, 490 US at 9 (determining that, although any of the factors was not "by itself proof of any illegal conduct and [was] quite consistent with innocent [activity,] * * * we think taken together they amount[ed] to reasonable suspicion"); *United States v. Lopez*, 849 F3d 921, 925 (10th Cir 2017) ("[R]easonable suspicion can be founded on a combination of factors that individually may be susceptible of innocent explanation.").

Crutchfield's stated reason for extending the traffic stop was that she believed that defendant "may have been the perpetrator of domestic violence." She testified:

"If [the driver] was in any sort of danger of being physically harmed again, I—she's not going to give me those answers if—if he was the reason how she got the black eye, she's not going to have a conver—an open conversation with

me in front of him. So, I needed to separate her from him, and find out what's going on. Has she been hurt or injured during the context of the stop?"

In other words, Crutchfield believed that the driver, sometime recently, had been the victim of domestic assault by defendant, and also believed that, under the circumstances, the driver remained in danger of further domestic assault by defendant. After hearing Crutchfield's testimony, the trial court concluded that Crutchfield had "reasonable suspicion to believe that the crime of assault had occurred."

In challenging that conclusion, defendant argues that the facts were simply insufficient to support reasonable suspicion that defendant was the cause of the black eye or that the black eye resulted from a criminal action. We therefore review the record to determine whether, giving due deference to the factual inferences of both the trooper and the trial court, the facts were sufficient, under the totality of the circumstances, to support reasonable suspicion that the driver had been the victim of domestic assault by defendant and was in danger of further assault.

Crutchfield focused on the following circumstances: 1) the driver had a black eye that appeared to be a few days old, based on its yellow and purple coloring; 2) she was visibly upset and appeared to have been crying; 3) defendant, instead of the driver, answered Crutchfield's question about the driver's black eye, and his explanation—that she had fallen off a ladder—appeared inconsistent with the injury; 4) the driver and defendant had the same last name; and 5) Crutchfield's training and experience led her to believe that she was seeing "indicators of domestic violence."

Although the circumstances that Crutchfield encountered may be susceptible to an innocent explanation, we are satisfied that Crutchfield articulated sufficient facts to support an objectively reasonable suspicion that defendant had assaulted the driver. It was reasonable for Crutchfield to conclude from the fact that the driver and defendant shared the same last name, combined with the fact that the driver was driving a truck owned by defendant and that defendant explained the cause of the driver's black eye, that the driver and defendant were married or otherwise shared a domestic

situation. Moreover, Crutchfield had asked the driver about the black eye, but defendant, rather than the driver, offered an answer that did not seem credible. Based on Crutchfield's training and experience, it was reasonable for her to suspect that defendant prevented the driver from explaining the cause of the black eye and that he attempted to mislead the trooper about its real cause, an assault by defendant. Additionally, although the driver's appearance—being visibly upset and having recently cried—was susceptible to an innocent explanation, such as the driver being upset about being pulled over, the driver's distraught state reasonably contributed to Crutchfield's belief that the driver had recently been assaulted by defendant and was in fear of further assault. We conclude that the trooper had reasonable suspicion to extend the traffic stop to investigate whether the driver had been assaulted by defendant.[3]

Affirmed.

---

[3] On appeal, defendant does not argue that Crutchfield's questions about the driver's methamphetamine use constituted an unlawful seizure of defendant, and we express no opinion about the legality of those questions.